**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| EMORY S. REDFEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV904 |
| | ) | |
| LEWIS SMITH and SAMI HASSAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina, seeks injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983 for alleged federal constitutional violations related to in-custody medical care and exposure to tobacco smoke. (See Docket Entry 1.) Defendants each have moved for summary judgment. (See Docket Entries 18, 25.) Plaintiff has made the following filings of note: 1) a letter motion "request[ing] this [C]ourt to issue an order [to North Carolina Prisoner Legal Services] to investigate" (Docket Entry 17 at 1); 2) a Motion to Dismiss Summary Judgment (Docket Entry 28); 3) a Motion for Dismissal of Defendant [sic] Motion for Summary Judgment (Docket Entry 30); and 4) a Motion to Supplement (Docket Entry 33). For the reasons that follow, Plaintiff's letter motion and Motion to Supplement will be denied, Defendants' summary judgment motions should be granted, and (to the extent they constitute motions and not responses to Defendants' summary judgment motions) Plaintiff's motions seeking dismissal of Defendants' summary judgment motions should be denied.

Plaintiff filed his instant Complaint with the United States District Court for the Eastern District of North Carolina on September 22, 2008. (Docket Entry 1.) On preliminary review, <u>see</u> 28 U.S.C. § 1915A(a), that court dismissed the claims against two of the named defendants on grounds of frivolousness,[1] but ordered the case to proceed against the above-captioned defendants and, pursuant to an arrangement in that district, requested North Carolina Prisoner Legal Services ("NCPLS") to investigate Plaintiff's claims. (Docket Entries 4, 5.) However, after a determination that venue for claims against the remaining defendants properly lay in the Middle District of North Carolina, the order directed to the NCPLS was rescinded and the case was transferred to this Court. (Docket Entries 6, 7.)[2]

The Complaint alleges the following pertinent facts (sworn to by Plaintiff under penalty of perjury (<u>see</u> Docket Entry 1 at 5)):

On August 27, 2003, Plaintiff learned that he had Hepatitis C. (<u>Id.</u> at 3.) He began treatment, but, by December 16, 2004, he "was not able to tolerate" it and his doctor "put the therapy on hold." (<u>Id.</u> at 3-4.) On January 31, 2006, Plaintiff received a state

---

[1] The Court therefore has removed those defendants from the case caption.

[2] Plaintiff later submitted a letter motion "request[ing] this [C]ourt to issue an order [directing NCPLS] to investigate [his claims]." (Docket Entry 17 at 1.) In support of that request, Plaintiff relied only on the rescinded order from the Eastern District of North Carolina. (<u>See</u> <u>id.</u> at 1 and Attachs.) This Court has no agreement with the NCPLS akin to the procedure in place in the Eastern District of North Carolina. Moreover, for reasons set out in the Discussion section below, no basis for such an investigation exists. Accordingly, the Court will deny Plaintiff's letter motion.

prison sentence of "5 years and 9 months." (<u>Id.</u> at 4.) Plaintiff gave his medical records to unidentified [North Carolina Department of Correction ("NCDOC")] "medical staff . . . [and] was told that [he] didn't have enoff [sic] time to get the needed treatment." (<u>Id.</u>)[3] "On Feb[ruary] 18, 2008, [Plaintiff] wrote [Defendant] Lewis Smith (Administrator) and his response was that 'At this time you do not meet clinical guidelines established by the [NCDOC] for referral to a Hepatology clinic.'" (<u>Id.</u>)[4] Plaintiff has "also spoken to [Defendant] Dr. Sami Hassan and all of [the] medical staff [at Albemarle Correctional Institution] with no help provided to [him]." (<u>Id.</u>) Plaintiff's family spoke to unspecified officials in Raleigh and "advised them of [Plaintiff's] prior treatments [but NCDOC] still refuse[d] to help [him]." (<u>Id.</u>) At the time he filed the Complaint, Plaintiff had "received no treatment or medication for Hepatitis C." (<u>Id.</u>)[5]

Plaintiff has "Chronic Sleep Apnea . . . [and] sleep[s] with a C-PAP machine. There is no smoking allowed inside the building."

---

[3] Plaintiff did not assert that Defendants Hassan or Smith ever refused him any type of Hepatitis C treatment on such a basis. (<u>See</u> Docket Entry 1 at 3-4.)

[4] Plaintiff attached to his Complaint a copy of the letter he received from Defendant Smith. (Docket Entry 1 at 7.) The letter (dated March 6, 2008) sets out the entire history of Plaintiff's interactions with the medical staff at Albemarle Correctional Institution, where Defendant Smith serves as the "Correctional Administrator I." (<u>Id.</u>) It reflects no requests from Plaintiff regarding his Hepatitis C and states that, "[s]ince arriving at [said facility], [Plaintiff] ha[s] been seen by the unit physician at least every other month" and that his "labs are closely monitored by the unit physician." (<u>Id.</u>)

[5] Plaintiff attached to his Complaint documents related to a grievance he filed on July 23, 2008, in which he requested to "be sent to a hepatology clinic." (Docket Entry 1 at 11-13.) Plaintiff was advised to "submit a sick call with any health concerns." (<u>Id.</u> at 12-13.)

-3-

(Id. at 6.)  "The C-PAP machine draws everything out of the air. This makes it more dangerous to [his] health."  (Id.)[6]

Defendant Hassan moved for summary judgment on the ground that Plaintiff failed to present sufficient evidence of deliberate indifference to a serious medical need by Defendant Hassan or of any substantial harm suffered due to Defendant Hassan's conduct. (Docket Entry 18 at 1.)  In support, Defendant Hassan attached an affidavit and medical records (Docket Entry 18-2) that reflect the following:

1) prior to entering prison, Plaintiff had a history of inability to tolerate Hepatitis C treatment;

2) on, January 30, 2006, the day before Plaintiff received his prison sentence, his doctors recommended no treatment for Hepatitis C, but rather only follow-up with a gastroenterologist;

3) Plaintiff was receiving no Hepatitis C treatment when he entered Albemarle Correctional Institution,[7] and no reason existed to prescribe such treatment at that time given his prior lack of tolerance;

---

[6] Documents attached by Plaintiff to his Complaint related to a grievance he lodged on June 16, 2008, suggest that Plaintiff believed persons were smoking in the building in violation of facility rules or were smoking outside the building such that smoke got into the building.  (See Docket Entry 1 at 8-10.) The documents reflect that prison officials investigated and determined that facility rules were being enforced.  (See id. at 9-10.)

[7] Defendant Hassan's affidavit references February 9, 2006, as the date of Plaintiff's arrival at Albemarle Correctional Institution (see Docket Entry 18-2 at 5); however, the NCDOC document cited (and attached) by Defendant Hassan shows that Plaintiff was admitted to the NCDOC at another facility on February 9, 2006, and was transferred to Albemarle Correctional Institution on March 21, 2006 (see id. at 16).

-4-

4) Albemarle Correctional Institution has a sick call policy that Plaintiff used to obtain medical care from Defendant Hassan on a number of occasions prior to August 2008, but none of those sick calls involved issues related to Hepatitis C;

5) Plaintiff first submitted a sick call seeking a referral to the Hepatology Clinic[8] on August 3, 2008;

6) in response to that sick call, Plaintiff was examined on August 4, 2008, at which time his prior failure to tolerate Hepatitis C treatment due to bleeding again was noted;

7) Plaintiff underwent blood tests at Defendant Hassan's direction to evaluate whether he met the criteria for referral to the Hepatology Clinic and Defendant Hassan then referred Plaintiff to the Hepatology Clinic on August 14, 2008;

8) a request for NCDOC approval was submitted on September 2, 2008, and the NCDOC approved the referral on September 30, 2008;

9) Defendant Hassan received information from the Hepatology Clinic that Plaintiff was examined on November 11, 2008 (at which time Plaintiff discussed his inability to tolerate prior treatment for Hepatitis C due to bleeding and was advised that various factors – including his age, past inability to withstand treatment, and his other health problems – made him a poor candidate for Hepatitis C treatment), that the Hepatology Clinic prescribed

---

[8] "The Hepatology Clinic is a specialized clinic which examines and treats inmates who are Hepatitis positive, provided that the inmates meet certain criteria . . . ." (Docket Entry 18-2 at 3.)

-5-

continued monitoring and an abdominal ultrasound, but no treatment, and that Plaintiff agreed with that course of action;

10) Plaintiff underwent an ultrasound that showed no advanced liver problems or other concerns;

11) the Hepatology Clinic ordered no further treatment after receiving the ultrasound results; and

12) Defendant Hassan has no authority over smoking policies at Albemarle Correctional Institution, but has personal knowledge that prison officials enforce the policy against smoking inside the facility and within 25 feet of facility entrances.

Defendant Smith similarly moved for summary judgment on the ground that no genuine issues of material fact existed and that he was entitled to judgment as a matter of law. (Docket Entry 25 at 1.) In support, Defendant Smith attached an affidavit from a Nurse Supervisor at Albemarle Correctional Institution with 31 pages of medical records which reflect that Plaintiff had a diagnosis of moderate obstructive sleep apnea prior to entering prison,[9] that, before and after he entered prison, Plaintiff used a CPAP (i.e., "continuous positive airway pressure") machine to treat his sleep apnea, that prison medical staff responded to Plaintiff's requests for new filters for or other assistance with his CPAP machine, and that Plaintiff never complained to medical staff about smoke affecting his use of the CPAP machine. (See Docket Entry 25-2.)

---

[9] "Sleep apnea is a disorder in which breathing recurrently stops during sleep . . . . Obstructive sleep apnea is an upper airway narrowing that occurs most often in moderately to severely obese persons." (Docket Entry 25-2 at 2.)

In addition, Defendant Smith submitted his own affidavit and a two-page exhibit documenting the enforcement of the no-smoking policy at Albemarle Correctional Institution. (Docket Entry 25-3.) Defendant Smith denied making any clinical decisions about Plaintiff's medical care, noted that (upon receiving a letter from Plaintiff about such matters) he investigated and determined that medical staff had provided appropriate services, and asserted that he enforced the facility's no-smoking policy. (See id. at 1-3.)

Immediately after the filing of each Defendant's summary judgment motion, the Clerk mailed Plaintiff a letter explaining that he had 30 days "to file a 20-page response in opposition to the defendant(s)' motion(s) . . . accompanied by affidavits setting out [his] version of any relevant disputed material facts or . . . other responsive material." (Docket Entries 20, 27.) Within the allotted time, Plaintiff filed documents with attached affidavits and exhibits; however, rather than styling his filings as "response[s] in opposition" to Defendants' summary judgment motions, Plaintiff styled them as a "Motion to Dismiss Summary Judgment" and a "Motion for Dismissal of Defendant [sic] Motion for Summary Judgment," respectively. (Docket Entries 28, 30.)

In his affidavit attached to the first of the foregoing filings (in apparent response to Defendant Hassan's summary judgment motion), Plaintiff stated that he "spoke with medical staff, and [Defendant] Hassan, about [his] medical needs" and received a response that he "didn't meet the clinical guidelines, established by the Department of Corrections, for referral or

treatment." (Docket Entry 28 at 4.)[10] The affidavit does not contest the evidence submitted by Defendant Hassan reflecting that: 1) before Plaintiff entered prison, he had ceased any treatment for Hepatitis C because of bleeding such treatment caused him; 2) immediately prior to Plaintiff's receipt of a prison sentence in late January 2006, Plaintiff's doctors prescribed no Hepatitis C treatment for him; and 3) when Plaintiff arrived at Albemarle Correctional Institution a short time later, no reason existed to prescribe him Hepatitis C treatment, because of his prior lack of tolerance for such treatment. (See id.)

Plaintiff's affidavit also provides as follows:

> The Defendant [sic] allegations that Plaintiff did'nt [sic] submit a sick call or request a referral to the Hepatology Clinic, in his affidavit is false, because Plaintiff do not receive copy of sick call request I can not provides [sic] this document, but I can provides [sic] letters that was wrote [sic] to Superintendent Lewis Smith, September 18, 2007 about deliberate indifference to serious medical need, I didn't receive a response, the next letter to Mr. Smith was on February 18, 2008. And he responsed [sic] that I did not meet the clinical guidelines.

(Id.)[11] The attached letter Plaintiff claims to have sent to Defendant Smith on September 18, 2007, makes no reference to any

---

[10] In this and other filings, Plaintiff often utilizes all capital letters; for ease of reading, the Court will use standard capitalization conventions in quoting such passages.

[11] Plaintiff's affidavit also references an attached, undated letter he claims to have sent to a non-party. (Docket Entry 28 at 4; Docket Entry 28-2.) Plaintiff offers no evidence that said letter was ever brought to the attention of Defendants; moreover, the contents of the letter indicate that it was drafted after Defendant Smith's letter of March 6, 2008, and likely after July 23, 2008, the date Plaintiff filed a grievance regarding his desire for a referral to the Hepatology Clinic. (See Docket Entry 28-2; see also Docket Entry 1 at 11-13.) As such, said letter has no apparent bearing on any material factual questions.

specific health issue. (See Docket Entry 28-4.) Nor does Plaintiff's affidavit (or related documentation) provide any evidence that contradicts Defendant Smith's statement in his letter dated March 6, 2008 (responding to Plaintiff's letter dated February 18, 2008) that, as of that date, Plaintiff failed to meet the clinical guidelines for referral to the Hepatology Clinic. (See Docket Entry 28 at 4; Docket Entry 28-3.)

Finally, Plaintiff's foregoing affidavit contains a conclusory denial that, upon his referral to the Hepatology Clinic in August 2008, "the Hepatology Clinic did not prescribe any treatment, and that Plaintiff agree [sic] with the Hepatology Clinic that he is not a candidate for active medication or treatment." (Docket Entry 28 at 4-5.) The affidavit offers no information about what, if any, treatment the Hepatology Clinic prescribed at that time or how, if at all, Plaintiff reacted. (See id.)

In conjunction with Plaintiff's filing made in apparent response to Defendant Smith's summary judgment motion, Plaintiff again included an affidavit and a variety of attachments. (See Docket Entry 30.)[12] The affidavit consists solely of legal arguments. (See id. at 10-11.) All but one of the attachments fall into one of the following categories: 1) communications from

---

[12] Pages three through nine of the filing do not constitute part of Plaintiff's affidavit and are not otherwise made under penalty of perjury; accordingly, statements on those pages do not constitute evidence for purposes of analyzing the summary judgment record. See In re French, 499 F.3d 345, 358 (4th Cir. 2007) ("Dr. Freedenburg's statement was neither sworn under oath nor made under the penalty of perjury. As a result, the statement fails to meet the most basic requirement of form required by Rule 56(e).").

Plaintiff to prison officials and/or materials related to grievances instituted by Plaintiff which bear dates after Plaintiff filed the instant action; 2) documents Plaintiff previously attached to his Complaint and/or his filing after Defendant Hassan's summary judgment motion; or 3) decisions or filings from other cases. (See Docket Entries 30-2, 30-3, 30-4, 30-5.) The sole exception consists of an "Inmate Request/Information Form that Plaintiff apparently submitted on August 30, 2008, in which he solicited a status report regarding the blood tests Defendant Hassan had ordered in response to Plaintiff's sick call earlier that month seeking a referral to the Hepatology Clinic. (See Docket Entry 30-3 at 9.) None of the materials submitted by Plaintiff contain evidence that conflicts with the evidence submitted by Defendants as to material facts concerning Plaintiff's Hepatitis C treatment or exposure to tobacco smoke. (See Docket Entries 30, 30-2, 30-3, 30-4, 30-5.)

Plaintiff subsequently filed a "Motion to Supplement" in which he sought permission, "[p]ursuant to Rule 15(d) of the Federal Rules of Civil Procedure, and Local Rule 7.3(j)(6), . . . to supplement, due to transactions, occurrences and events, material to this action, which have happened since Plaintiff submitted his May 20, 2009 Responses to Defendant Smith's Motion for Summary Judgment." (Docket Entry 33 at 1.) More specifically, Plaintiff asked the Court to "allow the supplemental information, in the form of Plaintiff's Affidavit/Declaration [attached to his instant motion], to be considered by this Court." (Id.) In the attached

"Affidavit/Declaration," Plaintiff reported that he was "sent to the Hepatology Clinic on at least three (3) occasions between September and November of 2009" and that, "[d]uring the third visit to the Hepatology Clinic in November of 2009, the doctor ordered that the eleven month treatment regimen, begin, for [his] hepatitis." (Docket Entry 34 at 1.) Plaintiff then set out information about administrative confusion over when treatment actually was to begin and noted that it did begin on January 9, 2010. (See id. at 2-3.) Finally, Plaintiff asserted that "Doctor Karen Dougherty is the doctor who screened me and ordered treatment. . . . Doctor Dougherty never determined that I was not a candidate for treatment, nor did I every [sic] agree with the Hepatology Clinic to not try any treatment." (Id. at 3.)[13]

## DISCUSSION

As noted above in the Background section, Defendants each have moved for summary judgment. "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). In making this determination, "the court must

---

[13] Plaintiff produced no evidence that Dr. Dougherty or anyone else ever opined that Plaintiff suffered any harm due to the failure to begin treatment sooner, that treatment was recommended for Plaintiff in November 2008, or that Plaintiff should have been referred to the Hepatology Clinic prior to August 2008. (See Docket Entry 34 at 1-3.)

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Accord Matvia v. Bald Head Island Mgt., Inc., 259 F.3d 261, 266 (4th Cir. 2001) ("The court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor.").

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.' Rather, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (internal emphasis omitted). Conversely, "[t]he party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" Emmett, 532 F.3d at 297 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). See also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

According to Plaintiff, "there are genuine issue [sic] of material fact that . . . [Defendant] Hassan was and is deliberately

indifferent to a serious medical need of the Plaintiff." (Docket Entry 28 at 1.) Plaintiff similarly contends that "there are genuine issue [sic] of material facts that . . . Defendants [sic] Smith, and his staff, and medical staff are still in [sic] deliberately indifferent to the seriousness of [his] medical needs and are continuing to allow [him] to be expose [sic] to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to [his] future health." (Docket Entry 30 at 1.) Plaintiff, however, fails to identify in a meaningful fashion any such material factual disputes.

"Claims that prison officials failed to provide adequate medical care . . . sound in the Eighth Amendment . . . [and thus] there is a subjective and an objective component to showing a violation of the right. The plaintiff must demonstrate that the [officials] acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Instead, Plaintiff must make "two showings":

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the [official] *should have* recognized it; [he] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient.

<u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." <u>Iko</u>, 535 F.3d at 241.

The record before the Court, outlined in the Background section, provides no evidentiary basis for a reasonable fact-finder to conclude that, under the foregoing standard, either Defendant Hassan or Defendant Smith behaved in a deliberately indifferent manner regarding Plaintiff's Hepatitis C condition. Based on said record, the undisputed evidence establishes that:

1) prior to his entry into prison, Plaintiff had ceased any Hepatitis C treatment due to his inability to tolerate it;

2) shortly before he arrived at Albemarle Correctional Institution, Plaintiff's doctors had prescribed no treatment for his Hepatitis C;

3) upon his entry into prison and his arrival at Albemarle Correctional Institution shortly thereafter, Plaintiff was not receiving any treatment for Hepatitis C;

4) upon Plaintiff's arrival at Albemarle Correctional Institution, Defendant Hassan saw no reason for Plaintiff to undergo Hepatitis C treatment given his prior lack of tolerance;

5) from Plaintiff's arrival at Albemarle Correctional Institution until his referral to the Hepatology Clinic in August 2008, a doctor examined Plaintiff at least every other month and closely monitored Plaintiff's laboratory test results;

6) when Plaintiff wrote a letter to Defendant Smith regarding specific medical care issues on February 18, 2008, Defendant Smith investigated the matter, determined that medical staff had provided appropriate medical care to Plaintiff, and reported to Plaintiff that he did not meet the clinical guidelines for referral to the Hepatology Clinic;

7) upon receiving a sick call from Plaintiff seeking a referral to the Hepatology Clinic in August 2008, Defendant Hassan promptly ordered testing and thereafter referred Plaintiff to the Hepatology Clinic;

8) the Hepatology Clinic subsequently informed Defendant Hassan that, based on an examination of Plaintiff and discussion with him regarding factors that made him a poor candidate for Hepatitis C treatment (including his prior inability to tolerate such treatment), no treatment had been recommended and that Plaintiff agreed with that course of action;[14]

9) at the request of the Hepatology Clinic, Plaintiff received an abdominal ultrasound that showed no advanced liver problems;

10) the results of Plaintiff's abdominal ultrasound were provided to the Hepatology Clinic and Defendant Hassan received no follow-up order of treatment for Plaintiff; and

---

[14] As set out in the Background Section, Plaintiff has disputed in conclusory fashion that the Hepatology Clinic actually decided not to recommend treatment and that he agreed with that view, but has failed to present any evidence of what the Hepatology Clinic recommended or how he reacted. Moreover, Plaintiff has not cited any record evidence to contradict Defendant Hassan's account of what information the Hepatology Clinic conveyed to him. Under these circumstances and in light of the other undisputed evidence, no material question of fact exists due to this indication of a "dispute" by Plaintiff.

11) Defendant Smith made no clinical decisions about Plaintiff's Hepatitis C treatment.

In light of these facts, Plaintiff cannot, as a matter of law, show that, during the relevant time period, Defendants Hassan or Smith "subjectively recognized a substantial risk of harm" faced by Plaintiff if he failed to receive treatment for Hepatitis C or that they "subjectively recognized that [their] actions were inappropriate in light of that risk." Parrish, 372 F.3d at 303. Moreover, to the extent Plaintiff focuses on the time that elapsed between his arrival at Albemarle Correctional Institution and his referral to the Hepatology Clinic, his deliberate indifference claim cannot survive because he has failed to produce any evidence "that the delay caused substantial harm." Wynn v. Mundo, 367 F. Supp. 2d 832, 839 (M.D.N.C.) (recommendation of Dixon, M.J., adopted by Bullock, J.), aff'd, 142 Fed. Appx. 193 (4th Cir. 2005). See also Dickinson v. New Mexico Health Inst., 335 Fed. Appx. 729, 734 (10th Cir. 2009) ("As regards his claim that defendants failed to treat him for Hepatitis C . . . , plaintiff has not alleged any harm and therefore has failed to establish the objective element of the deliberate indifference standard."). Accordingly, the Court should grant Defendants' respective motions for summary judgment as to Plaintiff's claim regarding Hepatitis C treatment.

The information contained in Plaintiff's Motion to Supplement does not alter this conclusion. As set forth above in the Background section, in connection with his Motion to Supplement, Plaintiff asserted that, in late 2009 and early 2010, he again

received a referral to the Hepatology Clinic and eventually began a Hepatitis C treatment regimen. Accepting these assertions as true, they shed no light on whether Defendants Hassan and Smith had the requisite, subjective mental state to support a claim of deliberate indifference regarding their conduct during previous periods of time or whether Plaintiff suffered any harm from the lack of a referral to the Hepatology Clinic prior to August 2008. Accordingly, to the extent Federal Rule of Civil Procedure 15(d) provides a viable mechanism for Plaintiff to present such matters to the Court,[15] Plaintiff's supplemental information would not create a legitimate, material factual dispute as to the Hepatitis C claim in the Complaint.[16]

Under these circumstances, the Court will deny Plaintiff's Motion to Supplement as futile. See Franks v. Ross, 313 F.3d 184, 198 & n.15 (4th Cir. 2002) (recognizing that same standard applies to motions to supplement under Fed. R. Civ. P. 15(d), as to motions to amend under Fed. R. Civ. P. 15(a)); Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996) (ruling that, pursuant to Foman v. Davis, 371 U.S. 178, 182 (1962), in addressing motion to

---

[15] As Defendant Hassan notes (see Docket Entry 35 at 3-4), it is not clear whether Plaintiff seeks to supplement his Complaint (in which case Rule 15(d) would apply) or to supplement his filings contesting Defendants' summary judgment motions (in which case Rule 15(d) would not appear to apply). Moreover, the Local Rule cited by Plaintiff in connection with his instant motion offers no independent procedural vehicle for his request, but rather simply exempts motions to supplement pleadings from the requirement of an accompanying brief. See M.D.N.C. R. 7.3(j)(6).

[16] These allegations, however, would moot Plaintiff's request for injunctive relief in the form of court-ordered treatment via the Hepatology Clinic.

-17-

supplement, court should assess, inter alia, "probable merit" of new allegations, because, although <u>Foman</u> involved "Fed. R. Civ. P. 15(a), not Rule 15(d), . . . the standard is the same"); <u>Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004) (recommendation of Dixon, M.J., adopted by Beaty, J.) ("Rule 15(d) motions are to be evaluated under the same standards used to evaluate motions to amend pleadings under Rule 15(a), which generally states that leave to amend shall be freely granted when justice requires unless there are valid reasons for denying leave, such as undue delay, bad faith, or futility.").[17]

The Court also should grant summary judgment against Plaintiff on his claim regarding exposure to tobacco smoke. First, to the extent Plaintiff seeks to proceed against Defendant Hassan on this claim, he has failed to identify any evidence that would support a finding that Defendant Hassan played any part in the establishment or enforcement of policies related to smoking at Albemarle Correctional Institution or inmate placement within the NCDOC. Accordingly, any such claim against Defendant Hassan fails as a matter of law. <u>See, e.g.</u>, <u>Garland v. Catoe</u>, No. CA 4:00-3024-19BF, 2001 WL 34681751, at *6-7 (D.S.C. Nov. 7, 2001) (unpublished) (granting summary judgment to defendants who had no control over

---

[17] For reasons stated in <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr.19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to Plaintiff's Motion to Supplement.

matters related to plaintiff's environmental smoke exposure claim), aff'd, 31 Fed. Appx. 278 (4th Cir. 2002).

Second, the uncontradicted record evidence (detailed above in the Background section) establishes that, at all relevant times, Albemarle Correctional Institution prohibited smoking inside and near entrances to its buildings, that Defendant Smith had procedures in place to enforce this no-smoking policy, that prison officials at the facility enforced the no-smoking policy, that, when Plaintiff filed a grievance about environmental tobacco smoke, prison officials investigated and determined that the no-smoking policy was being enforced, that Plaintiff never complained to medical staff at Albemarle Correctional Institution about environmental smoke causing him problems related to his CPAP machine, and that said medical staff responded to Plaintiff's other requests for assistance with his CPAP machine.

In light of these facts, the claim against Defendant Smith for deliberate indifference to the risk environmental tobacco smoke posed to Plaintiff fails as a matter of law. Notably, Plaintiff has not identified any evidence that he was exposed to an objectively unreasonable level of environmental tobacco smoke. See, e.g., Simba v. Hunt, No. 5:98-CT-691-F(3), 2007 WL 2873808, at *5 (E.D.N.C. Sept. 26, 2007) (unpublished) (ruling that mere allegation of exposure to environmental smoke was insufficient to support Eighth Amendment claim); Tyson v. Ozmint, Civil Action No. 6:06-0385-PMD-WMC, 2006 WL 3139841, at *4 (D.S.C. Oct. 30, 2006) (unpublished) (same). Instead, Plaintiff simply asks the Court to

accept his speculation as to this matter, something the Court should decline to do. <u>See generally</u> <u>Francis</u>, 452 F.3d at 308. <u>Cf.</u> <u>Blue v. Grannis</u>, No. CIV S-05-1256 GEB EFB P, 2007 WL 2758025, at *5 (E.D. Cal. Sept. 21, 2007) (unpublished) (holding that question of whether exposure to environmental tobacco smoke posed risk to person utilizing CPAP machine "calls for an expert medical opinion"). Moreover, the existence and enforcement (even if imperfect) of a no-smoking policy forecloses deliberate indifference claims predicated on exposure to environmental tobacco smoke. <u>See, e.g.</u>, <u>Scott v. District of Columbia</u>, 139 F.3d 940, 944 (D.C. Cir. 1998); <u>Simba</u>, 2007 WL 2873808, at *6; <u>Bartlett v. Pearson</u>, 406 F. Supp. 2d 626, 631-33 (E.D. Va. 2005).

Simply put, no reasonable fact-finder could conclude from the record that Defendant Smith "subjectively recognized a substantial risk of harm" faced by Plaintiff in this regard or that Defendant Smith "subjectively recognized that [his] actions were inappropriate in light of that risk." <u>Parrish</u>, 372 F.3d at 303.

CONCLUSION

By prior order, this case has proceeded only against Defendants Smith and Hassan. Plaintiff has failed to identify record evidence that would allow a reasonable fact-finder to determine that Defendants Smith or Hassan behaved in a deliberately indifferent manner concerning Plaintiff's treatment for Hepatitis C and/or his exposure to tobacco smoke so as to violate the United States Constitution. The information submitted by Plaintiff in connection with his Motion to Supplement would not alter that

conclusion. Finally, the Court has no basis to order the NCPLS to investigate Plaintiff's claims.

**IT IS THEREFORE ORDERED** that the case caption in this matter shall hereinafter be amended to list only Lewis Smith and Sami Hassan as Defendants in this action.

**IT IS FURTHER ORDERED** that Plaintiff's letter motion seeking an order directing NCPLS to investigate his claims (Docket Entry 17) and Plaintiff's Motion to Supplement (Docket Entry 33) are **DENIED**.

**IT IS RECOMMENDED** that Defendant Hassan's Motion for Summary Judgment (Docket Entry 18) and Defendant Smith's Motion for Summary Judgment (Docket Entry 25) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that, to the extent they constitute motions and not responses to Defendants' summary judgment motions, Plaintiff's Motion to Dismiss Summary Judgment (Docket Entry 28) and Motion for Dismissal of Defendant [sic] Motion for Summary Judgment (Docket Entry 30) be **DENIED**.

                          /s/ L. Patrick Auld
                        **L. Patrick Auld**
                  **United States Magistrate Judge**
October 12, 2010